AO 91 (Rev. 02/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
### Northern District of California

| | | |
|---|---|---|
| United States of America<br>v.<br>**CHRISTOPHER CONWAY**<br>*Defendant* | ) ) ) ) ) | Case No.<br><br>4:11-70756 MAG |

**FILED**
JUL 12 2011
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of  01/23/2011  in the county of  Contra Costa  in the  Northern  District of California  , the defendant violated  18  U. S. C. §  1591(a)(1)  , an offense described as follows:

Harboring a person younger than 18 years of age knowing that such person will be caused to engage in a commercial sex act.

This criminal complaint is based on these facts:

See attached declaration of FBI Special Agent Martha E. Parker.

☑ Continued on the attached sheet.

APPROVED AS TO FORM:
*[signature]*
OWEN MARTIKAN, AUSA

*[signature]*
*Complainant's signature*

Special Agent Martha E. Parker, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/12/11

*[signature]*
*Judge's signature*

City and state:  San Francisco, California

Hon. Timothy Bommer, US Magistrate Judge
*Printed name and title*


Document No.
District Court
Criminal Case Processing

AFFIDAVIT IN SUPPORT OF ARREST WARRANT

I, Special Agent Martha E. Parker, being duly sworn, do hereby depose and state:

I. **INTRODUCTION AND AGENT BACKGROUND.**

1. This affidavit is in support of complaint charging Christopher CONWAY with violating 18 U.S.C. § 1591(a)(1), Harboring a Person Under 18 Who Will Be Caused to Engage in a Commercial Sex Act. Based on the facts set forth herein, I have probable cause to believe that CONWAY knowingly, and in or affecting interstate commerce, harbored J.D., a minor, knowing, or in reckless disregard of the fact, that J.D. will be caused to engage in a commercial sex act. The statements contained in this affidavit are based on my own investigation, my training and experience as a law enforcement agent, on information provided to me by other law enforcement agents, investigators and individuals with knowledge of this matter, and on information that I have obtained through my review of documents and other evidence. This affidavit summarizes such information as is necessary to establish probable cause that CONWAY violated 18 U.S.C. § 1591(a)(1), but does not purport to set forth all of the evidence gathered to date in this investigation.

2. I am a Special Agent of the Federal Bureau of Investigation (FBI) currently assigned to the Oakland Resident Agency of the San Francisco Field Office in Oakland, California. I have been employed as a Special Agent of the FBI since January, 1999. Since joining the FBI, I have investigated violations of federal law in violent crimes, and am designated as a Crimes Against Children (CAC) Coordinator for the San Francisco Field Office. As a CAC Coordinator, I investigate crimes against children that involve federal offenses such as kidnapping, child sex tourism, and child prostitution. As part of my investigations, I have reviewed internet advertisements for prostitution and photographs that are intended to be used as

advertisements for prostitution. I have interviewed adult prostitutes and victims of child prostitution. I have experience in the area of criminal sexual exploitation of children through training, conversations with other FBI agents and law enforcement officers, involvement in prior investigations of such criminal conduct, and by speaking with convicted sex offenders and victims of child sexual exploitation.

## II. RELEVANT CRIMINAL STATUTES

3. Under 18 U.S.C. § 1591(a)(1), it is a crime for any person knowingly, and in or affecting interstate or foreign commerce, to recruit, entice, harbor, transport, provide, obtain, or maintain by any means a person, knowing or in reckless disregard of the fact that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act.

4. Under 18 U.S.C. § 1591(c), in a prosecution under section 1591(a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, or maintained, the Government need not prove that the defendant knew that the person had not attained the age of 18 years.

## III. DEFINITIONS

5. The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.

## IV. FACTS CONSTITUTING PROBABLE CAUSE

6. Most of the facts in this affidavit are derived from San Rafael and Richmond police reports that I have reviewed, and information provided to me by Richmond Police Officer Kevin Simmons.

7. On October 12, 2010, Richmond police officers, working in plainclothes during a prostitution enforcement detail, observed a female person, later identified as 15-year old J.D., in a high-prostitution area and appearing to contact men in passing vehicles for the purpose of prostitution. J.D. was arrested for violating California Penal Code 653.22, Loitering with the Intent to Engage in Prostitution. The assigned detective on the case, Kevin Simmons, ran J.D.'s cellular phone number through a Google search and located an ad for escort services on the website www.sfxescorts.com. That ad contained photos of a female person whose face was not visible. Simmons then used the screen name listed in that ad, "sexy_cherry," to conduct another Google search, where he located an ad on www.myredbook.com.

8. Based on my experience, I know that www.myredbook.com is a website whose primary objective is the advertisement of "escort" and "massage" services in the San Francisco Bay Area and beyond. Also based on my experience, I know that the "escort" and "massage" services advertised on this site are primarily for the purpose of prostitution.

9. In the ads that Detective Simmons located, there were photographs of a female person who appeared to be J.D., and a contact telephone number of 510/XXX-XXXX. Based on that telephone number, Det. Simmons was able to retrieve six ads on www.myredbook.com featuring J.D. posted between November, 2010 and March, 2011. The ads indicate that J.D. has worked in the California cities of Richmond, San Pablo, Sacramento, Oakland, and Roseville.

10. On February 1, 2011, Richmond police received a call reporting an altercation on San Pablo Avenue in Richmond, across from an Economy Inn. J.D. and CONWAY were located at the scene, where police discovered that CONWAY had an outstanding arrest warrant and that J.D. was listed as a missing person and also had an outstanding arrest warrant. Both were then

3

taken into custody. At that time, J.D had an ad posted on www.myredbook.com indicating that she was working in the Richmond/San Pablo area. Detective Simmons later spoke with the manager at the Economy Inn, and confirmed that CONWAY had rented Room 132 there from January 23, 2011, through January 28, 2011, and had paid cash for the room.

11. On March 3, 2011, pursuant to a state search warrant, Detective Simmons received information from Metro PCS regarding cell phone number 510/XXX-XXX. According to Metro PCS, that number is subscribed to by Christopher CONWAY, 624 Maine Avenue, Richmond, California.

12. On March 9, 2011, Detective Simmons received additional information related to text messages on the Metro PCS cellular phone. He later reviewed the messages from January, 2011, in which it appears that J.D. was the phone's primary user. In several text messages, J.D. is referred to as "V___," which is a shortened version of her first name, and at least once is referred to by her complete first name. During the month of January, 2011, based on the text messages described below and others, it appears that J.D. was working as a prostitute.

13. According to the Metro PCS information, on January 23, 2011, J.D. began texting someone with cell phone number 267/XXX-XXXX. During this interaction, J.D. told the individual that she was at the Economy Inn, Room 132, on San Pablo Avenue. I have determined that area code 267 is located in Pennsylvania.



14. On January 27, 2011, J.D. began texting someone from cell phone number 707/XXX-XXXX, in which J.D. advised the individual that she will charge him $90 for 30 minutes and $~~140~~ 100 for an hour. The individual asked J.D. if she had a condom, and J.D. stated that she did. J.D. also told the individual that she was staying at the Economy Inn on San Pablo
4

Avenue, Room 132.

15. On March 23, 2011, Detective Simmons conducted a Google search of cell phone number 510/XXX-XXXX, and located an ad on www.myredbook.com that had been posted that day at 7:41am. The ad was for escort services from "sexyy_cherry" and contained images of a female whom appeared to be J.D. The ad indicated that she was currently working in San Rafael, California.

16. The same day, Detective Simmons checked several hotels in the San Rafael area, and discovered that Christopher CONWAY was currently renting Room 148 at the Motel 6, 737 E. Francisco Blvd, San Rafael, California. CONWAY had paid cash for the room, and there was no vehicle information attached to the room registration.

17. Detective Simmons then called Sergeant Raul Aguilar of the San Rafael Police Department and requested his assistance in locating J.D.

18. On the same day, San Rafael Police officer Christopher Duncan, in an undercover capacity, contacted J.D. via text message to 510/XXX-XXXX and stated that he had seen her ad. During the ensuing text string, Duncan tells J.D., "I'm looking to get a bj maybe sex if the price is right. Shud I bring the rubber or that tkn care of I might have to stop at the store." In my training and experience, I know prostitutes and their clients refer to oral copulation as a "bj." J.D. responded to that text by writing, "Ok for both its 90 for jus a bj its 50 and yea you can bring one because I jus used my last on lastnite..." Later during the conversation, J.D. instructed the undercover officer to go to 737 E. Francisco Blvd and call her when he gets close.

19. At 7:23 pm, the undercover officer called J.D., who told him to go to Room 148, and to bring a condom because she didn't have any. The undercover officer then walked to

Room 148 and knocked on the door. The door was opened by a female person who appeared to be the same as the one depicted in the photos in the ad on www.myredbook.com. The officer then advised that he was with the San Rafael Police Department. Other police officers arrived, and after a brief search of personal belongings in the room to determine the person's identity, a State of California medical benefits card with J.D.'s name was located in a backpack, and J.D. admitted to her identity, and stated that her date of birth was Xxxxxx XX, 1994.

20. While the undercover officer was contacting J.D., Sergeant Aguilar, who was in a marked police vehicle near the front of the motel room, saw CONWAY looking down at Room 148 from a nearby stairwell. When Sergeant Aguilar attempted to contact CONWAY, he walked away quickly, but was soon found hiding in another motel stairwell. Police officers confirmed CONWAY's identity, determined that he was on probation with a search clause, and in the ensuing search found a small amount of marijuana. CONWAY was then placed under arrest for the marijuana and probation violation.

21. CONWAY was transported to the San Rafael Police Department and interviewed by Detective George Schikore. After being advised of his *Miranda* rights, CONWAY agreed to speak with the Detective. CONWAY stated that he was J.D.'s boyfriend and that he believed J.D. to be 17 years old. CONWAY also stated that he knows that J.D. works as a prostitute, and that she advertises on www.myredbook.com for that purpose. CONWAY told the Detective that he was sharing the Motel 6 room with J.D., and that he was there to "watch her back." CONWAY admitted that he receives money from J.D. when she has it, and that they have had consensual sex on a few occasions.

22. On March 23, 2011, San Rafael Police officers arrested J.D. and seized her cell phone. Incident to J.D.'s arrest, Officer Diaz used a universal forensic extraction device to extract data from the seized cell phone.

23. Upon reviewing the data extracted from the cell phone, Officer Diaz found various photographs of J.D. posing in her underwear, and the photograph used for J.D.'s www.myredbook.com ad. J.D.'s phone also contained a video depicting her engaged in sexual intercourse with Conway. CONWAY and J.D. can be seen from approximately the waist up, nude, and making motions and sounds consistent with sexual intercourse. Based on the angle of the camera, it appears that CONWAY is holding the camera above them while they engage in sexual intercourse.

24. On March 23, 2011, Detective Simmons was notified that J.D. had been located, and responded to the San Rafael Police Department, where he then interviewed her. During the interview, J.D. told Detective Simmons that CONWAY is aware that she is working as a prostitute, although he doesn't like it, and that CONWAY helped her by renting the motel room under his name even though she paid for it. J.D. stated that CONWAY stays with her in or around the motel while she is working in order to protect her. However, J.D. stated that she does not give money she earns as a prostitute to CONWAY.

25. During the interview, J.D. also told Detective Simmons that she and CONWAY have been in a dating relationship for approximately one year, and have had consensual sexual intercourse during that time. Detective Simmons told J.D. that he had seen a video on her phone of her and CONWAY having sex. J.D. stated that the video was taken sometime during the previous year, and she then told Detective Simmons that it was "gross" that he had watched the

video.

26. On March 24, 2011, Detective Simmons interviewed CONWAY at the Marin County Jail. CONWAY was advised of his *Miranda* rights and agreed to speak with Simmons. CONWAY told Simmons that he had been dating J.D. since the end of October, 2010, or the beginning of November, 2010, and stated that J.D. had just turned 17 years old at that time. According to CONWAY, his relationship with J.D. has included consensual sexual intercourse during the past few months. CONWAY also stated that the two often stay at CONWAY's mother's apartment in Richmond, or that they rent a hotel room together.

27. CONWAY stated that he had rented a room for himself and J.D. at the Motel 6 at 737 Francisco Blvd in San Rafael on or about March 21, 2011. CONWAY also stated that on February 1, 2011, while the two were staying at the Economy Inn in Richmond, CONWAY saw a man leaving their motel room. CONWAY stated that he then realized that J.D. may be working as a prostitute, and confronted her about the man. The ensuing argument between CONWAY and J.D. led to Richmond Police contacting and arresting them.

28. Also during the interview, CONWAY advised that he does not have a job, but would get money from his mother, and that J.D. would buy him items such as clothing and food, which he considered "gifts."

29. On June 24, 2011, I spoke to J.D. by telephone, and J.D. confirmed to me that the video on the cell phone seized by San Rafael Police depicted her and CONWAY engaged in sexual intercourse.

## V. CONCLUSION AND SEALING REQUEST

30. Based on my experience and training, I believe that public disclosure of this Complaint, my Affidavit, or the Arrest Warrant might motivate CONWAY to flee, to destroy evidence, or to attempt to contact J.D. Therefore, I request that the Court issue the accompanying proposed Sealing Order.

31. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that Christopher CONWAY has violated 18 U.S.C. § 1591(a)(1).

Special Agent Martha E. Parker
Federal Bureau of Investigation

Subscribed and sworn
to before me this
12 day of July, 2011

HON. TIMOTHY BOMMER
United States Magistrate Judge